UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SAAED MOSLEM,

    *Plaintiff*,

v.

DEPARTMENT OF JUSTICE et al.,

    *Defendants*.

Civil Action No. 23-3541 (TJK)

### MEMORANDUM OPINION AND ORDER

Saaed Moslem wants records related to the criminal investigation that landed him in federal prison. To that end, he alleges that he filed requests under the Freedom of Information Act with several federal agencies. Still without the desired records in late 2023, Moslem sued three agencies and the Attorney General under FOIA. One defendant—the Department of Justice's Tax Division—moved to dismiss for lack of standing because the only request that Moslem identified as directed to that agency was submitted neither by him nor by anyone on his behalf. Moslem opposed that motion and requested various forms of relief unrelated to this jurisdictional issue, including the Court's recusal, sanctions, and compelled production of records.

Because Moslem moves for recusal based only on disagreements with the Court's rulings, that relief is unwarranted. His other miscellaneous requests fare no better. And as for the motion to dismiss, Moslem has not shown to a preponderance that he personally submitted the FOIA request to the Tax Division or had someone submit it on his behalf, so he lacks standing to challenge how the Division handled it. Thus, the Court will deny Moslem's motion for recusal and other requests for relief, grant the Tax Division's motion, and dismiss the case against it.

I.      Background

Saaed Moslem is serving a sentence in federal prison for a "fraud related offense." ECF No. 1 ("Compl.") at 2. He says that he filed FOIA requests with the Federal Bureau of Investigation, the Department of Justice's Executive Office for United States Attorneys ("Executive Office" or "EOUSA"), and the Internal Revenue Service. *See id.* at 3–4. Although light on specifics, Moslem generally asserts that he seeks materials related to his criminal trial. *See id.* at 6–7. From the FBI, for example, Moslem requested emails between an alleged "manipulator and fraudster"—who "entrapp[ed] and ensnar[ed] others"—and the FBI, IRS, and U.S. Attorneys' Office for New York's Southern District. *Id.* at 3–4, 6. The agency purportedly told Moslem that the records were exempt from disclosure and, at the time he filed the complaint, had not yet decided his administrative appeal. *See id.* at 5. And his other requests were similarly unfruitful for one reason or another. *See id.* at 5–6.

Frustrated with the lack of records, Moslem sued four defendants in late 2023: the Department of Justice, FBI, IRS, and then-Attorney General Merrick Garland. He lists the specific FOIA requests underlying his challenge and alleges that each defendant has improperly withheld records subject to those requests. Compl. at 4, 7–8. So he seeks declaratory and injunctive relief, including an order directing Defendants to produce responsive records "by a date certain." *Id.* at 8. One of those defendants—the IRS—has been replaced by DOJ's Tax Division. *See* Minute Order of July 18, 2024. As the Tax Division explained, Moslem incorrectly identified a FOIA request—"FOIPA/TAX#11494"—as directed to the IRS when it instead went to the Tax Division. *See* ECF No. 10 at 1–2.

Since then, this case has not progressed like a typical FOIA lawsuit. Two components of DOJ—the FBI and the Tax Division—filed a status report explaining that the FBI was still searching for records and that the Tax Division had responded to one of Moslem's FOIA requests. *See*

2

ECF No. 14 at 1–2.[1]  The Court ordered them to file another status report in October 2024.  But before that deadline, Moslem moved to compel production from the FBI, the Executive Office, and the IRS, which was no longer a defendant at that point.  After the FBI and the Tax Division opposed that motion, the Court denied it as premature.  The FBI, the Court explained, was processing Moslem's request, so summary-judgment briefing *after* that processing and production was the appropriate way to assess whether the agency had complied with its FOIA obligations.  *See* Minute Order of Nov. 15, 2024.  And although Moslem has not named the Executive Office as a defendant, the Court did not rest on that deficiency.  *See id.*  Instead, it explained that Moslem's motion was premature as to that agency too because the Executive Office seemed to be processing the requests.  *See id.*  And finally, the request to the Tax Division that Moslem challenged was not identified in his complaint, so that challenge was "not properly before this Court."  *Id.*  The Court did not decide the merits of Moslem's FOIA claim, which—as the Court explained—could proceed as "typical FOIA case[s]" do.  *Id.*

In that vein, the Court granted the Tax Division's request for a summary-judgment briefing schedule.  Complying with that schedule, the Tax Division moved for summary judgment—or, alternatively, to dismiss—on one ground: the Court lacks subject-matter jurisdiction over the claim against the Tax Division because Moslem did not make the FOIA request identified in his complaint.  *See* ECF No. 21-2 at 1–4.  Moslem opposed that motion and simultaneously requested that the Court recuse from this case.  And he injected still more requests for relief when responding to the Tax Division's opposition: he again sought to compel document production and "Vaughn Indices," and he asked for sanctions against (unspecified) defendants.  ECF No. 28 at 13.

---

[1] As it turns out, the request that the Tax Division discussed in this status report—"[R]equest #11513"—was not identified in Moslem's complaint.  ECF No. 14 at 2.

## II.     Legal Standards

"Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). "The evidence presented must show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "Where the nonmoving party is proceeding pro se, courts in this jurisdiction will construe the non-moving party's filings liberally." *Cunningham v. DOJ*, 40 F. Supp. 3d 71, 82 (D.D.C. 2014), *aff'd*, No. 14-5112, 2014 WL 5838164 (D.C. Cir. Oct. 21, 2014). "However, a pro se litigant still has the burden of establishing more than '[t]he mere existence of a scintilla of evidence' in support of [her] position." *Id.* (first alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

When a defendant moves to dismiss under Rule 12(b)(1), the jurisdictional challenge may be either "facial" or "factual." *See Am. Oversight v. U.S. Dep't of Veterans Affairs*, 498 F. Supp. 3d 145, 152 (D.D.C. 2020). The former "contests the legal sufficiency of the jurisdictional allegations," so "the Court must accept" the allegations as true and "construe the complaint in the light most favorable to the" plaintiff. *Id.* (internal quotation marks and citation omitted). But a factual challenge takes aim at the truth of those allegations. So when resolving this kind of Rule 12(b)(1) motion, the Court "may not deny" it just "by assuming the truth of the facts alleged." *Ranchers-Cattlemen Action Legal Fund, U.S. Stockgrowers of Am. v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 333 (D.D.C. 2021) (internal quotation marks and citation omitted). Instead, the Court "must go beyond the pleadings and resolve any disputed issues of fact" necessary to decide the motion. *Id.* Put another way, the "plaintiff's allegations" receive "no presumption of truthfulness," and he "bears the burden of providing the facts supporting subject matter jurisdiction by a preponderance

4

of the evidence." Wright & Miller, *Federal Practice & Procedure* § 1350 (May 2025 update).

### III. Analysis

#### A. The Court's Recusal Is Unwarranted

Moslem contends that the Court is biased and must recuse itself. *See* ECF No. 24 at 13; ECF No. 28 at 13. That claim brings into play 28 U.S.C. § 455, under which a federal judge must "disqualify himself" if "his impartiality might reasonably be questioned." For the "appearance of bias or prejudice" to "be disqualifying," though, it "must stem from an extrajudicial source." *Klayman v. Jud. Watch, Inc.*, 278 F. Supp. 3d 252, 255 (D.D.C. 2017) (citation omitted). And the standard is objective: would a "reasonable and informed observer . . . question the judge's impartiality"? *Id.* (citation omitted). "[J]udicial rulings alone almost never" clear that high bar. *United States ex rel. Stephenson v. Powell*, No. 18-cv-927 (TJK), 2019 WL 13255495, at *1 (D.D.C. May 1, 2019) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). That is because a judge's "error, of course, is by itself hardly a basis for imputing bias or even the appearance of partiality." *Klayman*, 278 F. Supp. 3d at 255 (citation omitted).

Moslem runs headlong into that essential limit on § 455 because he just vents frustrations with the Court's ruling. Take his word for it: he points to putative "errors in Judge Timothy J. Kelly's justification regarding EOUSA in the November 15, 2024 Ruling." ECF No. 24 at 7. For example, Moslem believes that the Court wrongly stated that the Executive Office was not a proper defendant even though Moslem did not sue that specific agency. *Id.* This gripe omits that the Court did not rest on that observation; it instead ruled that Moslem's motion was premature even if the Executive Office were a proper defendant. *See* Minute Order of Nov. 15, 2024. In any event, this argument boils down to Moslem's belief that the Court erred when addressing his motion to compel. And that "dissatisfaction with" the November 2024 "ruling" is possibly a "ground for appeal—*not* for recusal." *Klayman*, 278 F. Supp. 3d at 255 (quoting *Liteky*, 510 U.S. at 555).

Moslem's other complaints fall into the same bucket. He insists that the Court "ignore[d]" that the Executive Office has "excessive[ly] delay[ed]" its response to the FOIA requests such that the agency has "constructive[ly] deni[ed]" them. ECF No. 24 at 8. This alleged judicial error rests on shaky ground too. After all, the "penalty" for an agency "not adher[ing] to FOIA's explicit timelines" is that it "cannot rely on the administrative exhaustion requirement to keep cases from getting into court"—not that the agency may be compelled to produce documents immediately. *Citizens for Resp. & Ethics in Wash. v. FEC*, 711 F.3d 180, 189–90 (D.C. Cir. 2013). But even if the Court erred as Moslem suggests, he offers no reason to think that the error is more than the run-of-the-mill judicial mistake that does not warrant recusal. So too for his claims that the Court improperly relied on "[t]echnicalities" and did not demand evidence that the Executive Office is working through its response to Moslem's requests. ECF No. 24 at 8–9; *accord* ECF No. 19 at 2 (FBI representing in signed opposition that the Executive Office "is in the process of responding to the requests that [Moslem] identified").

Nor can Moslem escape this problem by dressing up his claims of error as something more than judicial mistakes. A claim that a judge must recuse for violating his "duty" to "ensure compliance with federal laws like FOIA" is just a claim that a judge must recuse anytime he allegedly errs when overseeing a FOIA case. ECF No. 24 at 10. And that proposition cannot be right, since it would empower every litigant to force recusal anytime he disagrees with a judge's ruling. The same defect pervades Moslem's other theories, all of which rest on purported judicial mistakes. *See id.* at 2–3, 10 (arguing that the Court failed to perform its duties impartially and to "uphold the integrity and independence of the judiciary"); *id.* at 10–11 (asserting that the November 15 order shows that the Court is "complicit[] in concealing government misconduct"); *id.* at 11 (claiming that the Court has "conspir[ed] to deprive" Moslem "of his constitutional rights"); *id.* at 12 (citing

6

various criminal statutes and a law providing for private lawsuits against state officials as a "legal framework for accountability of Judge Timothy J Kelly"). *Id.* Simply put, invoking these lofty concepts is different from showing that a judge has undermined them. And Moslem, while long on the former, is short on the latter.

Changing tune in reply, Moslem asserts that the Court has exhibited a "pattern[] of bias" that goes beyond alleged one-off judicial mistakes. ECF No. 28 at 7. But underneath this altered label is the same substance: claims that the Court has (1) criminally conspired against Moslem by denying a motion to compel, *see id.* at 8–9; (2) been "complicit[] in concealing misconduct," *see id.* at 8; and (3) undermined both judicial integrity and the "duty to perform duties diligently," *see id.* at 8–11. These claims, to be sure, are "baseless" and unsupported. *Osei v. Standard Chartered Bank*, No. 18-cv-1530 (RC), 2019 WL 917998, at *5 (D.D.C. Feb. 25, 2019). And that defect is an independent problem for Moslem. *See id.* But beyond that, Moslem continues to "rest[] entirely on judicial rulings," which underlie all his claims of conspiracy and complicity. *SEC v. Loving Spirit Found. Inc.*, 392 F.3d 486, 494 (D.C. Cir. 2004). Nor does he explain why his disagreement with how the Court decided his motion to compel warrants departure from the rule that judicial decisions—even if erroneous—"virtually never provide a basis for recusal." *Id.* (describing a motion relying on judicial rulings as "frivolous"). Sprinkling in citations to cases involving egregious judicial misconduct gets Moslem nowhere. *See Gonzalez v. Comm'n on Jud. Performance*, 657 P.2d 372, 373, 377 (Cal. 1983) (removing judge from office for over a dozen counts of "wilful [sic] misconduct and conduct prejudicial," including multiple cases in which the judge "intentionally exploited his judicial office to attempt to influence the disposition of criminal matters"); *In re Braswell*, 600 S.E.2d 849, 850–51 (N.C. 2004) (censuring judge for failing to recuse from a case in which the plaintiff "had an unrelated lawsuit pending against" the judge).

For all these reasons, the Court will deny Moslem's request for recusal and address the merits of the Tax Division's motion.

**B.     The Court Lacks Subject-Matter Jurisdiction Over the Tax Division**

Some brush-clearing is necessary before assessing Moslem's standing. In its motion, the Tax Division appears to move primarily for summary judgment under Rule 56, s*ee* ECF No. 21 at 1, which would explain its statement of undisputed material facts, *see* ECF No. 21-1. But the Tax Division focuses on moving to *dismiss* in the memorandum supporting that motion. Rule 12(b)(1), it explains, covers "motion[s] to dismiss for lack of standing," and Moslem lacks standing to sue the Tax Division because he did not submit the challenged FOIA request. ECF No. 21-2 at 1–2 (citation omitted); *see also id.* at 4 (requesting only that the Court "*dismiss* [Moslem's] claims against the Tax Division for lack of standing" (emphasis added)). For two reasons, the Court will construe the Tax Division's motion as one to dismiss. First, the substance of the Division's argument is geared towards that relief, no matter how the motion is stylized. And second, the Tax Division presses the kind of factual jurisdictional challenge that the caselaw contemplates for Rule 12(b)(1) motions. Indeed, when "[f]aced with a factual attack on subject matter jurisdiction," district courts "may proceed as [they] never could under Rule 12(b)(6) or [Rule] 56" because "[n]o presumptive truthfulness attaches to plaintiff's allegations" and because "the existence of disputed material facts will not preclude" evaluation of "the merits of jurisdictional claims." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1028 (9th Cir. 2023) (citation omitted).

Now to that jurisdictional argument. Because "Article III confines the federal judicial power to the resolution of 'Cases' and 'Controversies,'" a plaintiff invoking federal-court jurisdiction must establish that he has standing—that is, a "personal stake in the case." *TransUnion LLC*

8

*v. Ramirez*, 594 U.S. 413, 423 (2021) (internal quotation marks and citation omitted). This personal stake must exist as to "each defendant." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). And part of this necessary showing is the injury-in-fact requirement, which insists on an injury that is "concrete, particularized, and actual or imminent." *TransUnion LLC*, 594 U.S. at 423. For "standing purposes," a FOIA "requester is injured-in-fact . . . because he did not get what the statute entitled him to receive." *Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 618 (D.C. Cir. 2006). The flip side is that a party generally "does not have standing to bring a lawsuit" challenging how an agency handled a FOIA request "if [the] party has not made a request within the meaning of" the statute. *Wetzel v. U.S. Dep't of Veterans Affairs*, 949 F. Supp. 2d 198, 202 (D.D.C. 2013). That is why "[c]ourts have consistently concluded that if an attorney submits a FOIA request on behalf of a client" but does not include "the client's name . . . on the request," then "only the attorney has standing to pursue relief under the statute." *Snarr v. Fed. Bureau of Prisons*, No. 19-cv-1412 (ABJ), 2020 WL 3639708, at *4 (D.D.C. July 6, 2020) (dismissing for lack of "subject matter jurisdiction"); *see also, e.g.*, *Smartflash, LLC v. U.S. Pat. & Trademark Office*, No. 22-cv-1123 (BAH), 2023 WL 5289287, at *4–6 (D.D.C. Aug. 17, 2023).

The key jurisdictional question, then, is whether Moslem has shown by a preponderance of the evidence that he made the FOIA request to the Tax Division or that the requester specified that he made it on Moslem's behalf. *See Ameen v. U.S. Dep't of State*, No. 21-cv-1399 (BAH), 2021 WL 4148532, at *3–5 (D.D.C. Sept. 13, 2021). He has not. The Tax Division's declarant, Carmen Banerjee, has been responsible for processing all FOIA requests submitted to the Division for over a decade. *See* ECF No. 21-3 ("Banerjee Decl.") ¶¶ 1–2. She and one government-information specialist—whom Banerjee supervises—are tasked with "processing and responding to the FOIA requests" that the Tax Division "receives." *Id.* ¶ 5. And according to Banerjee, "[a] person

9

other than the named Plaintiff" here "submitted by email the FOIA request [that] the complaint identifies as FOIPA/TAX#11494" in November 2021 and that was denied on December 21 of that year. *Compare id.* ¶¶ 6, 10, *with* Compl. at 6 (alleging that "a request to the IRS (FOIPA/TAX#11494 CMB:DFITGER) . . . was made in 2021" and "acknowledged in a December 21, 2021 correspondence" denying the request). Banerjee also explains that this FOIA request "did not state that the request was made on behalf of" Moslem. Banerjee Decl. ¶ 9.

The Tax Division's letter denying Request #11494 corroborates Banerjee's description. In that denial, Banerjee appears to quote the language of the request: "I"—the unidentified requester—"am requesting information through 2021" about "the criminal tax investigation and subsequent federal prosecution of Saaed Moslem." Banerjee Decl. at 4. The problem was that the requester was "not entitled to any third-party [tax] return information of another" without "written consent from that taxpayer." *Id.* And the request did not include "such a written consent" from the relevant taxpayer: presumably, Moslem. *Id.* So to sum up, the government official in charge of FOIA requests to the Tax Division provided a sworn declaration stating that someone other than Moslem submitted the FOIA request without claiming that he made it on Moslem's behalf, and the letter denying the request supports that explanation.[2]

Moslem tries to dance around this evidence but fails to carry his "burden of establishing" jurisdiction by showing either that he submitted the request or that someone else did so on his behalf (and indicated as much to the Tax Division). *Wetzel*, 949 F. Supp. 2d at 202. To begin, he claims that the Tax Division is wrong about who submitted the FOIA request because Moslem

---

[2] To complete the record, the Court ordered the Tax Division to file—*ex parte* and under seal—the disputed FOIA request. The Tax Division complied, *see* ECF No. 33-1, and this filing confirms the Tax Division's representations. Nothing about the request suggests that Moslem made the request or that the requester made it on his behalf.

10

"explicitly stated in his complaint that he submitted this request." ECF No. 24 at 3. That does not help him for two reasons. First, Moslem's "factual allegations . . . are not entitled to a presumption of validity" in this context. *Am. Oversight*, 498 F. Supp. 3d at 153. And second, in the complaint, Moslem did not allege that *he* submitted Request #11494. Instead, he says that this request "was made in 2021" but never identifies who made it. Compl. at 6. That ambiguous allegation also contrasts with his descriptions of personal involvement with other requests. *See id.* at 4 (identifying a request to the FBI and alleging that "Plaintiff submitted an [sic] FOIA request"); *id.* at 5 (identifying a different request and alleging that Moslem received a letter "in response to Plaintiff's request").

True, Moslem appears to title this portion of his response to the Tax Division's motion—which he claims to submit "under the penalty of perjury"—as "Plaintiff Submitted FOIA Request #11494." ECF No. 24 at 1, 3. But this conclusory sentence alone is hardly enough to carry the day for him. Moslem provides no other details supporting the claim that he submitted the FOIA request. Nor does he address the sworn statement of the Tax Division's declarant, which explains that someone other than Moslem submitted the request. More still, Moslem fails to explain why the Tax Division would have sent the response letter that it did if Moslem had personally made the FOIA request.

In addition to these shortcomings, Moslem contradicts his conclusory assertion about personal submission by later focusing on the permissibility of third-party FOIA requests. For example, he says that "[e]ven if another individual submitted the request on Plaintiff's behalf, agencies are required to process such requests when proper authorization is provided." ECF No. 24 at 4. And he doubles (and triples) down on his third-party-authorization theory in a later filing. There, he claims that "FOIA permits requests by authorized third parties." ECF No. 28 at 1. He also

11

accuses the Tax Division of failing "to seek authorization from Plaintiff" before denying the request—authorization that would have been unnecessary had Moslem himself submitted the request. *Id.* at 2. Relatedly, Moslem faults the Tax Division for not giving him a DOJ form "to verify authorization *for third-party requests*." *Id.* (emphasis added). And to ice a well-frosted cake, Moslem claims that "Request #11494" was "constructive[ly] assign[ed]"—either to himself or some unknown person—because he "explicit[ly] identifi[ed]" it "in his complaint." *Id.* Either way, constructive assignment to anyone would not have been required for Moslem to pursue a FOIA claim had he personally submitted the FOIA request. So especially in light of these arguments and the factual predicates for advancing them, Moslem has not carried his burden of showing that he submitted the challenged request.

Moslem raises a few other issues, but none changes the result. True enough, an individual can have "standing to bring a FOIA challenge" if a third party—say, an attorney—submits a FOIA request and "clearly indicate[s] that it is being made on behalf of" that individual. *Smallwood v. DOJ*, 266 F. Supp. 3d 217, 220 (D.D.C. 2017) (citation omitted). In pressing this point, though, Moslem is right on the law but has not shown that this exception applies here. The Tax Division official responsible for FOIA requests explains that "[R]equest #11494 did not state that [it] was made on behalf of" Moslem. Banerjee Decl. ¶ 9. Her declaration tracks "the agency's response," which "indicates that it was not aware that" the requester "was making a request for" Moslem. *Smallwood*, 266 F. Supp. 3d at 221; *see also* Banerjee Decl. at 4 (explaining that the FOIA request lacked "written consent" authorizing release of records containing the tax "return information of another"). And all Moslem does to counter this evidence is state the legal rule—*i.e.*, a person *can* have standing if a third-party request shows that the requester clearly made it on the person's behalf—without ever saying (or showing) that the requester here told the Tax Division that he was

12

requesting records for Moslem. To the contrary, Moslem suggests that the requester did not do so. If the requester had, then the Tax Division would not have needed to ask for "clarification or additional documentation from" Moslem about the request. ECF No. 24 at 4. Nor would the Division have needed "to seek authorization from" him. ECF No. 28 at 2.

Relatedly, Moslem cannot cure this defect by claiming that he somehow assigned to himself (or possibly an unknown person) the rights to the FOIA request by identifying it in his complaint. *See* ECF No. 28 at 2. If FOIA plaintiffs could do that, they could always dodge the rule requiring personal submission—or submission on another's behalf—just by naming the request when they sue. But the caselaw forecloses that result. *See, e.g.*, *Smallwood*, 266 F. Supp. 3d at 220–21 ("[C]ourts routinely dismiss FOIA suits where an attorney filed the initial request without indicating that the request was made on behalf of the plaintiff."); *Smartflash, LLC*, 2023 WL 5289287, at *6. And sensibly so: a party cannot unilaterally assign a FOIA claim to himself, and Moslem's "assignment" rests only on *him* identifying the request in his complaint. *Cf. Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 259 (D.D.C. 2012) ("Agencies can and should shift the vast majority of any burden to the assignees themselves, requiring them to submit whatever documentation the agency deems sufficient to validate an assignment . . . ."). Nor has Moslem even suggested anyone else to whom he might have constructively assigned the FOIA request—or how that would give him standing.

Moslem's remaining contentions falter too. He insists that Supreme Court precedent "mandates agencies [to] clarify deficiencies with requesters" and that FOIA requires agencies to "notify the requester of deficiencies." ECF No. 28 at 2 (citing *DOJ v. Tax Analysts*, 492 U.S. 136 (1989), and then purporting to quote 5 U.S.C. § 552(a)(6)(A)(ii)). To begin, Moslem never explains how this argument helps him establish *standing*—a jurisdictional issue separate from the merits of how

13

the agency handled the FOIA request. In any event, Moslem is wrong on his own terms. The question in *Tax Analysts* was whether FOIA "requires" DOJ "to make available copies of district court decisions that it receives" when "litigating tax cases." 492 U.S. at 138. Moslem identifies no part of that opinion addressing the duty to "clarify" deficient FOIA requests, and the Court sees none. And although he purports to quote § 552(a)(6)(A)(ii) for the rule that agencies must "notify the requester of deficiencies," no such language appears in that provision or elsewhere in § 552. Instead, § 552(a)(6)(A)(ii) requires agencies to "make a determination with respect to any appeal within twenty days." Moslem may be referring to the provision permitting the agency to "toll[]" the "20-day period" if "necessary to clarify with the requester issues regarding *fee assessment*." *Id.* § 552(a)(6)(A)(ii)(II) (emphasis added). But that narrow allowance for the agency is a far cry from a general mandate to inform requesters of deficiencies before denying requests.

Finally, Moslem fares no better by pointing to a different FOIA claim. He briefly asserts that the Court has subject-matter jurisdiction based on "FOIA Request #11513," which he admits he did not "cite[] in the complaint." ECF No. 28 at 3. The Court already held that this omission means that any challenge to how the Tax Division addressed this request is "not properly before this Court." Minute Order of Nov. 15, 2024. And the Court's "jurisdiction" turns on "the current complaint as pleaded—not" on "some hypothetical amended complaint" in which Moslem may try to include this FOIA request. *Robinson v. Fed. Bureau of Prisons*, No. 22-cv-1098 (TJK), 2023 WL 4531826, at *4 (D.D.C. July 13, 2023). "[J]urisdiction," after all, "follows the operative pleading." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 39 (2025). That pleading says nothing about FOIA Request #11513, so this request cannot "create federal jurisdiction where it was once wanting." *Id.* at 36. Only "an amended pleading" can do that. *Id.*

In sum, for Moslem to have standing to sue the Tax Division, he needed to allege that it

14

caused him to suffer an injury in fact. On that score, his complaint rests on a single FOIA request. He has failed to show by a preponderance of the evidence that he made this request or that the requester indicated that he made it on Moslem's behalf. How the Tax Division handled the FOIA request, then, cannot provide Moslem with an injury "for standing purposes." *Wetzel*, 949 F. Supp. 2d at 202 (citation omitted). So the Court will grant the Tax Division's motion under Rule 12(b)(1) and dismiss the case against it for lack of subject-matter jurisdiction.[3]

### C. Moslem's Other Requests for Relief Are Unavailing

With little or no argument, Moslem requests a smattering of other relief in his responses to the Tax Division's motion. He seeks orders requiring the Tax Division and other agencies to search for records and produce "non-exempt portions." ECF No. 24 at 12–13. And he wants that production to happen "[i]mmediate[ly]." ECF No. 28 at 13. Beyond that relief, Moslem also asks for in-camera review of withheld records, the production of "Vaughn Indices," and sanctions for "agency bad faith" under 5 U.S.C. § 552(a)(4)(E). *Id.*

These requests fall flat for several reasons, some common across all and some specific to each. Generally, if Moslem wants the Court to grant relief, he should file a motion rather than shoehorn his requests into an opposition—especially because those requests relate to agencies that did not even join the opposed motion. And gesturing at relief without explaining why it is warranted is not enough; the Court will not "construct" Moslem's "legal arguments" for him. *Johnson*

---

[3] A district court need not hold a "formal hearing on" a Rule 12(b)(1) motion so long as "the nonmoving party" has an "opportunity to be heard." Wright & Miller, *Federal Practice & Procedure* § 1350. Moslem had that chance. He opposed the Tax Division's motion, *see* ECF No. 24, and then elaborated on the jurisdictional issue in a later filing, *see* ECF No. 28. In those filings, Moslem also chose to discuss issues irrelevant to the jurisdictional question. He contended, for example, that the Court criminally conspired to deprive him of his rights by denying a motion. *See, e.g.*, ECF No. 24 at 11; ECF No. 28 at 9. And he challenged the actions of other agencies who had not moved to dismiss or for summary judgment. *See* ECF No. 24 at 5–6; ECF No. 28 at 4–6. Still, the question is whether he had an opportunity, not how well he used it.

*v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) (citation omitted).

Those threshold problems aside, Moslem has not shown that he is entitled to any of this relief. Start with the sanctions request. Moslem does not say which agency he wants the Court to sanction, so this request stumbles at the starting line. In any event, he identifies no sanctionable conduct. And the provision under which he seeks sanctions provides only for "reasonable attorney fees and other litigation costs reasonably incurred in any" FOIA case "in which the complainant has *substantially prevailed*." 5 U.S.C. § 552(a)(4)(E) (emphasis added). But as revealed by his requests to compel production, Moslem has not yet prevailed in any way. So he has not shown that sanctions are appropriate.

On that note, Moslem has also failed to show that the Court should compel "IRS, FBI, [or] EOUSA" to search for records, immediately produce them, and provide Vaughn indices. ECF No. 24 at 12. The IRS is no longer a defendant. *See* Minute Order of July 18, 2024. And as explained, Moslem lacks standing to challenge how the IRS's replacement, the Tax Division, handled his FOIA request. So any "mot[ion] to compel" the Tax Division to take these actions falters because the "request" to that agency is not "at issue" in "the current action" anymore. *Brestle v. Lappin*, 20 F. Supp. 3d 65, 66 (D.D.C. 2013) (citation omitted).

The other two agencies—the FBI and Executive Office—have been complying with the Court's orders about processing, so there is nothing to compel from them either. Both have searched for and identified responsive records. *See* ECF No. 31 at 1, 4. And when they did, the agencies informed the Court that they were categorically withholding records under FOIA Exemption 7(A), *see id.* at 1–4, which exempts "records or information compiled for law enforcement purposes" to the extent that production "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A). So to move the case along, the FBI and Executive

16

Office proposed a schedule for summary judgment on whether Exemption 7(A) applied. *See* ECF No. 31 at 4. The Court set that schedule because "FOIA cases are typically and appropriately decided on motions for summary judgment." *Rodriguez v. U.S. Dep't of Army*, 31 F. Supp. 3d 218, 225 (D.D.C. 2014); *see also* Minute Order of Apr. 15, 2025. But these agencies later acknowledged that an impending decision in Moslem's Second Circuit appeal will soon "make the Exemption 7(A) withholding inapplicable." ECF No. 32 at 2. Thus, because the FBI and Executive Office "will need to fully process the responsive records" once Exemption 7(A) falls away, they asked to vacate the summary-judgment schedule. *Id.* at 3. Agreeing with that plan, the Court vacated the briefing schedule and ordered these two agencies to provide a proposal for further proceedings within two weeks of the Second Circuit's ruling or by August 1, 2025—whichever comes first. *See* Minute Order of June 2, 2025.

Like most FOIA requesters, Moslem would prefer to get his requested records faster. But that desire is not enough to short-circuit the typical FOIA process with a motion to compel immediate production. The agencies have searched for records and will need to assess them for potential exemptions and production shortly based on the Second Circuit's ruling. So on this record, Moslem's request to compel is unavailing.

### IV.   Conclusion and Order

For all the above reasons, it is hereby **ORDERED** the Tax Division's Motion, ECF No. 21, is construed as a motion to dismiss and is **GRANTED**. It is further **ORDERED** that the Tax Division is **DISMISSED** as a Defendant. It is further **ORDERED** that Moslem's requests for relief in his responses to that motion—including his Motion for Recusal, ECF No. 25, and his Motion to Compel, ECF No. 29—are **DENIED**.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: July 17, 2025